**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RODNEY MARK ROOT,<br><br>         Plaintiff,<br><br>    v.<br><br>GOLDEN EAGLE INSURANCE CORPORATION, a New Hampshire Corporation,<br><br>         Defendant. | Case No.: 1:12-cv-00727 - JLT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br>(Doc. 14) |

Defendant Golden Eagle Insurance Corporation seeks partial summary judgment in this action for breach of insurance contract. On November 20, 2012, Plaintiff Rodney Mark Root filed a Notice of Non-Opposition, asserting Plaintiff had an "insufficient basis for a meritorious opposition." (Doc. 23). For the following reasons, the Court **GRANTS** Defendant's motion for partial summary judgment. (Doc. 14)

**I.   PROCEDURAL HISTORY**

Plaintiff initiated this action on December 27, 2011, by filing his complaint for breach of insurance contract against Golden Eagle in Kern County Superior Court Case No. S-1500-CV-275504DRL. (Doc. 2, Exh. A). Plaintiff alleged he worked as a gynecologist and acquired insurance for his medical practice from Golden Eagle, through an appointed agent. (Doc. 2 at 8-9). According

to Plaintiff, insurance policy number BOP8380952 covered "various hazards, including damage to equipment used in Plaintiff's business." *Id.* at 9. Plaintiff alleged his "office and the equipment and machines located therein was severely damaged due to a sprinkler malfunction that flooded the office with water" on December 28, 2009. *Id.* Plaintiff asserts three of the damaged machines "were highly sophisticated machines," which were "rendered . . . useless for their intended purpose in that no person would wish to have such intimate medical procedures performed upon him or her with the knowledge that such machines had been severely damaged, even if such machines were repaired." *Id.* at 9-10.

Plaintiff alleges: "Defendant, acting in good faith was required under the terms of the Insurance Policy to treat the above-mentioned machines as being destroyed and to compensate Plaintiff for such damages as would accrue." (Doc. 2 at 10). However, Plaintiff asserts "Defendant refused to do so, and only paid Plaintiff a small fraction of [his] actual damages." *Id.* In addition, Plaintiff asserts Defendant refuses to compensate him beyond the amount of $50,000.00 "for the loss of use of office equipment damaged or destroyed," which Plaintiff alleges "exceeds the sum of $200,000.00." *Id.* Plaintiff alleges, "Defendant acted in bad faith throughout the claim process" by reassigning the claim to a different adjuster, "basing its analysis of the loss of use upon supposition rather than the actual facts of [his] practice, and by using accounting methods not generally recognized." *Id.* Further, Plaintiff contends an accountant made deliberate errors in order to reduce the amount of compensation. *Id.* According to Plaintiff, "Defendant was guilty of oppression in that Defendant acted in utter disregard of Plaintiffs [sic] common-law and statutory rights to have his claims settled in a reasonable manner." *Id.* at 10-11. Therefore, Plaintiff included a prayer for exemplary damages in addition to actual damages. *Id.* at 11.

On September 28, Golden Eagle filed the motion for partial summary judgment now pending before the Court. (Doc. 14). Golden Eagle requests the Court find:

1. Golden Eagle did not breach its contract of insurance by failing to pay to replace, rather than repair, the damaged equipment because the policy gave it the right to elect to pay repair costs rather than to pay to replace the damaged equipment.

2. Golden Eagle is entitled to summary judgment on Plaintiff's claim of insurance bad faith because the undisputed facts establish it acted reasonably and with proper cause as a matter of law in adjusting the claim.

(Doc. 14 at 1-2). In the alternative, "because there is no evidence that could be deemed clear and convincing evidence of malice or oppression," Golden Eagle asserts it is entitled to summary judgment on Plaintiff's claim for putative damages. *Id.* at 2.

On October 29, 2012, the parties filed a Joint Statement of Undisputed Facts. (Doc. 19). In it, the parties stipulated "that there is no clear and convincing evidence of malicious or oppressive behavior sufficient to support Plaintiff's request for punitive damages." *Id.* at 2. Therefore, "Plaintiff's prayer for punitive damages [was] withdrawn." *Id.* On November 14, 2012, Golden Eagle reported: "Plaintiff's counsel advised on November 13, 2012, the due date for plaintiff's opposition, that he had concluded he has insufficient basis for a meritorious opposition and therefore would not be filing any opposition to this motion." (Doc. 21 at 1). Thereafter, Plaintiff filed his Notice of Non-Opposition to the motion. (Doc. 23).

## II. STANDARDS FOR SUMMARY JUDGMENT

The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In addition, Rule 56 allows a court to grant summary adjudication, or partial summary judgment, when there is no genuine issue of material fact as to a particular claim or portion of that claim. Fed. R. Civ. P. 56(a); *see also Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("Rule 56 authorizes a summary adjudication that will often fall short of a final determination, even of a single claim . . .") (internal quotation marks and citation omitted). The standards that apply on a motion for summary judgment and a motion for summary adjudication are the same. *See* Fed. R. Civ. P. 56 (a), (c); *Mora v. Chem-Tronics*, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

A party seeking summary adjudication bears the "initial responsibility" of demonstrating the

absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987). The moving party demonstrates summary adjudication is appropriate by "informing the district court of the basis of its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).

If the moving party meets its initial burden, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue of a material fact. Fed R. Civ. P. 56(e); *Matsuhita*, 475 U.S. at 586. An opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 587. The party is required to tender evidence specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that a factual dispute exits. *Id.* at 586 n.11; Fed. R. Civ. P. 56(c). In addition, the opposing party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). However, "failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Even if a motion for summary adjudication is unopposed, a court cannot grant summary adjudication solely because no opposition has been filed. *Cristobal v. Siegel*, 26 F.3d 1488, 1494-95 & n.4 (9th Cir. 1994). The Court must apply standards consistent with Rule 56 to determine whether the moving party demonstrated there is no genuine issue of material fact and judgment is appropriate as a matter of law. *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). In resolving a motion for summary judgment, the Court examines the evidence provided by the parties, including pleadings depositions, answer to interrogatories, and admissions on file. *See* Fed. R. Civ. P. 56(c).

## III. UNDISPUTED MATERIAL FACTS[1]

According to the parties, Plaintiff entered into an insurance contract with Golden Eagle which included an effective period from January 30, 2009 through January 30, 2010. (UMF 1). This policy covered specified losses related to property damage at Plaintiff's place of business. *Id.* It also included a "Loss Payment" section, which provided in part:

> In the event of loss or damage covered by this policy:
> a. At our option, we will either:
>   (1) Pay the value of lost or damaged property;
>   (2) Pay the cost of repairing or replacing the lost or damaged property;
>   (3) Take all or any part of the property at an agreed or appraised value; or
>   (4) Repair, rebuild or replace the property with other property of like kind and quality.
> b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.
> c. We will not pay you more than your financial interest in the Covered Property.

(UMF 2). The policy provided coverage for the loss of business income sustained due to a necessary suspension of operations during the "period of restoration," which was defined as beginning 72 hours after the time of damage and ending on the date when the property is repaired, rebuilt or replaced with reasonable speed and similar quality or the date when business is resumed at a new permanent location, whichever is earliest. (UMF 3).

On January 4, 2010, Kia Insurance Associates submitted a claim on Plaintiff's behalf to Golden Eagle, reporting his business had suffered "water damage sprinkler leakage" on December 28, 2009. (UMF 4). Golden Eagle employed LWG Consulting, a firm believed to specialize in equipment loss investigations, to assist with Plaintiff's claim. (UMF 5). Within forty-five days after receiving notice of the claim, Golden Eagle advanced payments for equipment repairs totaling $40,000.00 on January 27, 2010 ($5,000.00), February 18, 2010 ($25,000.00), and February 19, 2010 ($10,000.00). (UMF 6). In addition, Golden Eagle made payments "to cover the entire costs of the repair estimates LGW [Consulting] obtained from the original manufacturers to have the equipment repaired and their warranties remaining in tact [sic]." (UMF 11).

On June 2, 2010, Deborah Bok, an auditor with Liberty Mutual Group, Inc., was assigned to evaluate Plaintiff's claim for business income loss. (UMF 12). Plaintiff informed Ms. Bok that his

---

[1] The facts are taken from the "Joint Statement of Undisputed Facts" filed by the parties on October 29, 2012. (Doc. 19).

gynecology practice had not been affected, and "only his aesthetic practice was affected by the claimed loss." (UMF 13). Ms. Bok requested Plaintiff supply the following information and documents related to his practice:

> (1) days and hours of operations; (2) monthly revenue broken by operation for the period 1/1/08 to the present; (3) weekly payroll for the period 11/1/09 to the present; (4) monthly billings vs. receivables for the period 1/1/09 to the present; (5) monthly profit and loss statements for the period 1/1/08 to the present; (6) 2008 and 2009 income tax returns; and (7) a copy of his commercial lease.

(UMF 14). Upon review of the information provided by Plaintiff, Ms. Bok reported on November 9, 2010 that Plaintiff "was entitled to $34,783.00 in lost income" for the period of restoration, which ended September 12, 2010, according to the claim adjuster. (UMF 22).

On September 23, 2011, Plaintiff's counsel wrote a letter to Scott Elliot of Golden Eagle, which identified "a $15,990.00 arithmetic error [in] Ms. Bok's audit report." (UMF 23). Ms. Bok corrected her report on or about October 6, 2011, Golden Eagle "promptly" issued a supplemental payment to Plaintiff. *Id.* Therefore, Golden Eagle issued payments to Plaintiff totaling $165,087.16 for equipment repair and business income loss. (UMF 24).

## IV. DISCUSSION AND ANALYSIS

### A. Defendant did not breach the contract by paying to repair the equipment.

A claim of breach of contract arises under California law, and a plaintiff must demonstrate (1) the existence of a contract, (2) performance or excuse for nonperformance by the plaintiff, (3) breach by the defendants, and (4) resulting damages. *Alcalde v. NAC Real Estate Invs. & Assignments, Inc.*, 316 Fed. App'x 661, 662 (9th Cir. 2009) (citing *First Comm. Mort. Co. v. Reece*, 108 Cal. Rptr. 2d 23, 33 (Ct. App. 2001)); *see also Haberbush v. Clark Oil Trading Co.*, 33 Fed. App'x 896, 898 (9th Cir. 2002) (identifying "agreement, consideration, performance by plaintiff, breach by defendant, and damages" as elements to a breach of contract).

Here, the parties do not dispute that they entered into a contractual agreement for insurance coverage. Rather, the parties disagree whether Golden Eagle breached the terms of the contract. Plaintiff alleges Golden Eagle "was required under the terms of the Insurance Policy to treat the . . . machines as being destroyed and to compensate Plaintiff for such damages as would accrue." (Doc. 2 at 10). On the other hand, Golden Eagle argues the "repair or replace" provision gave it "the right

under the plain language of its policy to pay the costs of the manufacturer's repairs rather than purchase new or replacement equipment." (Doc. 14 at 18).

As noted by Defendant, "California law requires that the mutual intention of the parties is to be inferred, if possible, solely from the written provisions of the contract." (Doc. 14 at 16) (citing *Stamas v. County of Madera*, 795 F.Supp.2d 1047, 1081 (E.D. Cal. 2011); *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 822 (1990)). Here, the parties entered in an agreement that provided that, *at its option*, Golden Eagle would pay the value of the damaged property, *or* pay the cost of repairing or replacing the damaged property. (UMF 2; Doc. 14-6 at 37). Because Golden Eagle paid the estimated costs of repair, it acted within the terms of the parties' agreement. Accordingly, Plaintiff has failed to demonstrate Golden Eagled breached its contract when it paid to repair, rather than replace, the damaged equipment. Thus, Defendant is entitled to summary adjudication of this claim. *See Celotex*, 477 U.S. at 322 (a defendant is entitled to summary judgment where the plaintiff fails to prove "an essential element" of a claim).

### B.     Defendant did not act in bad faith.

In every insurance policy, there is an implied covenant of good faith and fair dealing that neither the insurer nor the insured "will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Ins. Co.*, 50 Cal.2d 654, 658-59 (1958). Breach of the implied covenant by an insurer "sounds in both contract and tort," and "constitutes what is commonly called 'bad faith.'" *Archdale v. American Int'l Specialty Lines Ins. Co.*, 154 Cal.App.4th 449, 466 (2007); *see also Jordan v. Allstate Ins. Co.*, 148 Cal.App.4th 1062, 1071 (2007) ("An insurer is said to act in 'bad faith' when it not only breaches its policy contract but also breaches its implied covenant to deal fairly and in good faith with its insured").

The covenant of good faith and fair dealing is of "peculiar importance in insurance law because it may support the recovery of a tort measure of damages." *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 879, (2000) (citing *Comunale*, 50 Cal.2d. at 658). To establish a claim for insurance bad faith, a plaintiff must show: "[T]he conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad

judgment, or negligence, but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal.App.3d 1371, 1395, 272 Cal. Rptr. 387 (Ct. App. 1990); *see also Love v. Fire Insurance Exchange*, 221 Cal.App.3d 1136, 1151 (1990) (to establish bad faith, an insured party must show benefits due under the insurance policy were withheld and the reason for withholding benefits was unreasonable or without proper cause). An insurer has not acted in bad faith where there is a "genuine dispute" or "genuine issue" as to the insurer's liability or amount of coverage. *McCoy v. Progressive W. Ins. Co.*, 171 Cal. App. 4th 785, 793 (2009).

Significantly, Plaintiff agrees the delay of the $15,990.00 payment was due to an "arithmetic error [in] Ms. Bok's audit report," which was corrected "promptly" after notification of the error. (UMF 23). Accordingly, this delay in payment cannot be the basis for a bad faith claim because it appears not to be "a conscious and deliberate act," but rather an honest mistake or mere negligence. Although the parties may disagree about the amount of the payment due to Plaintiff, Golden Eagle utilized experts to determine the amounts due to Plaintiff for equipment repairs and lost business income, and the company paid the recommended amounts. (UMF 5, 11-12, 22-24). Therefore, Defendant's position "is maintained in good faith and on reasonable grounds," and Plaintiff has failed to demonstrate bad faith by Golden Eagle in paying the amount that it did. *See Wilson v. 21st Century Ins. Co.*, 42 Cal. 4th 713, 724 (2007); *Amadeo v. Principal Mut. Life Ins. Co.*, 290 F.3d 1152, 1161-62 (9th Cir. 2002) (summary adjudication may be granted "when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable"). Consequently, Defendant is entitled to summary adjudication of the claim that it did not act in bad faith in paying the sum it paid related to the loss of use and lost business income due to the insured event.

Finally, Defendant produced evidence that, though the claim file was reassigned several times to various adjusters before the claim was paid finally, this reassignment was due to various legitimate reasons. (Doc. 14-2 at 2) For example, claims representative Heflin attested that initially, the claim was assigned to a temporary employee and then to two other adjusters. Id. Apparently, each of these employees left the company which required the file be assigned to another adjuster who also left

Golden Eagle for a job with an independent adjusting firm. Id. After this, Heflin was assigned the matter and maintained the file until it was paid. Id. Though Defendant provides little explanation about these circumstances, apparently, it suffers from an unusually high employee turnover rate. However, this evidence is sufficient to demonstrate that the reassignment of the file was not done for any bad motive but, indeed, was caused by a transient work force.

In response, Plaintiff admits that he did not oppose the motion for summary adjudication with the understanding that the motion included the claim of bad faith related to the repeated reassignment of claims adjusters to the file. (Doc. 27 at 3) Indeed, the reason that Plaintiff did not oppose this motion was due to a lack of a sufficient, meritorious basis for doing so. (Doc. 23) Thus, the Court determines that Plaintiff has failed to counter the minimal evidence proffered by Defendant and has not demonstrated there exists a triable issue of genuine material fact. *Celotex*, 477 U.S. at 322.

## V.      CONCLUSION AND ORDER

Plaintiff failed to Defendant breached the insurance agreement by electing to pay for repairs rather than replacement of the damaged equipment. In addition, Plaintiff failed to demonstrate Defendant acted in bad faith when evaluating his claims. Accordingly, Defendant is entitled to summary adjudication of these claims. *See Celotex*, 477 U.S. at 322; Fed. R. Civ. P. 56(c).

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Plaintiff's prayer for punitive damages is **STRICKEN**;

2. As to the claim that Defendant acted in bad faith by repairing the damaged equipment, rather than replacing it, the motion for partial summary judgment (Doc. 14) is **GRANTED**:

3. As to the claim that Defendant acted in bad faith when it paid Plaintiff for the loss of use of the equipment and the lost business income caused by the insured event, the motion for partial summary judgment (Doc. 14) is **GRANTED**;

///
///
///
///

4. As to the claim that Defendant acted in bad faith when it repeatedly reassigned the matter to various claims adjusters, the motion for partial summary judgment (Doc. 14) is **GRANTED.**

IT IS SO ORDERED.

Dated:   **December 4, 2012**              **/s/ Jennifer L. Thurston**
                                            UNITED STATES MAGISTRATE JUDGE